Gail C. Lin, Esq. (Bar No. 036752001)
Jack A. Raisner, Esq. (*pro hac vice* forthcoming)
Isaac Raisner, Esq. (*pro hac vice* forthcoming)
René S. Roupinian, Esq.
RAISNER ROUPINIAN LLP
270 Madison Avenue, Suite 1801
New York, NY 10016
Telephone: (212) 221-1747
ATTORNEYS FOR PLAINTIFF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## (TRENTON DIVISION)

| | |
|---|---|
| JOSEPH HORLING, on behalf of himself and all others similarly situated,<br><br>                                  Plaintiff,<br><br>v.<br><br>ALLSTATE SALES GROUP, INC., ANTHONY TEPEDINO AND PATRYK MIELNICKI,<br><br>                                  Defendants. | Hon. Zahid N. Quraishi, U.S.D.J.<br>Hon. Tonianne J. Bongiovanni, U.S.M.J.<br><br>Civil Action No. 3:25-cv-15321-ZNQ-TJB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF WARN ACT, 29 U.S.C. § 2101, *ET SEQ*. AND VIOLATION OF NEW JERSEY MILLVILLE DALLAS AIRMOTIVE PLANT JOB LOSS NOTIFICATION ACT, N.J.S.A. § 34:21-1** |

Plaintiff Joseph Horling ("Plaintiff") alleges on behalf of himself and a putative class of similarly situated former employees by way of this Class Action Complaint against Allstate Sales Group, Inc. ("ASG"), Anthony Tepedino and Patryk Mielnicki (the "Individual Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff was terminated along with an estimated 500 other employees as part of, or as the foreseeable result of a mass layoff or plant closing ordered and carried out by one or more

of the Defendants on August 29, 2025, and within 90 days of that date.

2. ASG failed to give Plaintiff and similarly situated employees 60 days' advance notice of their terminations, as required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq*. (the "WARN Act" or "WARN"). ASG and the Individual Defendants (together, the "Defendants") failed to give Plaintiff and similarly situated employees 90 days' advance notice under the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act, N.J.S.A. § 34:21-1 *et seq*, as amended ("New Jersey WARN Act" or "NJ WARN").

3. Plaintiff seeks to enforce the WARN Act's statutory remedy of 60 days' back pay and benefits for himself and those similarly situated, and at least one week of severance pay for each year of employment, plus four additional weeks' severance for the violations under NJ WARN, in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(A), and N.J.S.A. § 34:21-2(b).

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367 and 29 U.S.C. § 2104(a)(5).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1409 and 29 U.S.C. § 2104(a)(5).

## THE PARTIES

### *Plaintiff*

6. Plaintiff was employed by Defendants as a Vice President of Electrical Sales from June 2017 until about August 29, 2025.

7. Plaintiff worked at, reported to, was based out of, or received assignments from

Defendants' facility located at 670 N Beers Street, Building 3, Holmdel, New Jersey (the "Facility") until his termination on or about August 29, 2025.

8. On or about August 29, 2025, Plaintiff was notified via email of his termination, as part of a mass layoff and/or plant closing at the Facility ordered and carried out by one or more of the Defendants.

9. At no time prior to August 29, 2025, did Plaintiff receive written notice that his employment would be terminated.

10. Plaintiff was terminated without cause.

11. On information and belief, along with Plaintiff, one or more of the Defendants also ordered and carried out the terminations of about 500 employees without cause on or about August 29, 2025.

12. On information and belief, none of the similarly situated former employees received 60 or 90 days' advance written notice of their terminations.

***Defendants***

13. Upon information and belief, at all relevant times, Defendants operate a business that provides engineering and construction services for the technology industry throughout the United States under the name "ASG" or "Allstate Group Sales, Inc."

14. Upon information and belief, Defendant ASG is a New York corporation that conducts business at its headquarters, located at 670 N Beers Street, Building 3, Holmdel, New Jersey.

15. Upon information and belief, Defendants employed more than 100 full time employees who worked at, reported to, or received assignments from the Facility until about August 29, 2025.

16. Upon information and belief, Defendant Tepedino was Chief Executive Officer and a member of the Board of Directors of ASG.

17. Upon information and belief, Defendant Mielnicki was President and Chief Operating Officer of ASG.

18. Upon information and belief, Defendant Mielnicki had been ASG's Chief Operating Officer since 2019. He was given the additional title of President in 2023. Defendant Tepedino communicated to the employees that, with the addition of this title, Defendant Mielnicki would be handling more of the day-to-day operations and the running of the business, to allow Defendant Tepedino to focus on other aspects of the business.

19. Defendant Mielnicki is married to Ariana Mielnicki, who is Defendant Tepedino's daughter and, upon information and belief, was at times the company's Chief People Officer and at other times, performed that role in large part, but informally. She generally performed high-level administrative and personnel functions.

20. Defendant Mielnicki was second in command to Defendant Tepedino.

21. Defendant Mielnicki's direct reports were approximately 5-6 Senior Vice Presidents.

22. The Senior Vice Presidents' direct reports were Vice Presidents, such as Plaintiff.

23. Defendant Mielnicki exercised authority and control over aspects of ASG's day-to-day operations, including personnel matters, capital expenditures and decisions regarding business opportunities.

24. Defendant Mielnicki had control over hiring, salary increases and bonus decisions for employees in the Operations department.

25. For a dozen or so layoffs in 2024 and 2025, the names of those to be laid off would usually come from Defendant Mielnicki or his wife, Ariana.

26. Defendant Mielnicki would meet with staff on Microsoft Teams in meetings where he was the highest-ranking officer and HR issues were discussed.

27. Upon information and belief, Defendant Mielnicki had authority to determine employee work schedules.

28. In June 2019, Plaintiff sought to move from a part-time position to a full-time position. To obtain that full-time position, Plaintiff was interviewed by Defendant Mielnicki.

29. In January 2025, Plaintiff needed to alter his work schedule. He met with Defendant Mielnicki, who gave him permission to make the schedule changes while maintaining his full-time role.

30. When Plaintiff was promoted to the Vice President role in 2021, his offer letter stated that he would report directly to Defendant Mielnicki or another individual designated by Defendant Tepedino.

31. Defendant Mielnicki was heavily involved in day-to-day operational decisions.

32. Decisions to open new lines of business, open new locations or branch out into new territories required Defendant Mielnicki's approval.

33. Bids to clients for more than approximately $50,000 worth of work required approval from Defendant Mielnicki.

34. Plaintiff was involved in expanding ASG's lines of business to include the construction and installation of electric vehicle ("EV") charging stations.

35. Defendant Mielnicki, whose approval was necessary to start performing this work, discussed the effort extensively with Plaintiff. Plaintiff needed to explain to Defendant Mielnicki how the work would be profitable.

36. Defendant Mielnicki was on regular weekly calls with Plaintiff and others involved in the EV work, where staffing on the EV projects was discussed. Earlier on, Defendant Tepedino was also on these calls, but he eventually stopped joining the calls, leaving Defendant Mielnicki as the seniormost manager on the calls.

37. Defendant Mielnicki also presided over weekly "cash flow management" calls, which included discussions around the payment of vendors. When ASG was unable to pay all vendors timely, Defendant Mielnicki decided which vendors ASG would pay first. Upon information and belief, where non-payment to a particular vendor posed a critical risk to the business, Defendant Mielnicki personally negotiated payments terms with the vendors.

38. The Individual Defendants are sued under only the NJ WARN Act.

39. On August 29, 2025, Plaintiff received an email from "HR" that read, in part:

> It is with a heavy heart that we share this update. Due to unforeseen challenges with our funding partners, we are facing financial constraints that require us to make a very difficult decision: effective immediately, we must ask all employees to pause work until further notice. We are doing everything in our power to get payroll processed as soon as possible, but at this time we have no definitive date.

40. Upon information and belief, on August 29, 2025, and within 90 days of that date, at least 170 affected employees of the Facility who were entitled to WARN notice (including Plaintiff) suffered job losses as a result of the mass layoff and/or closing of the Facility without adequate notice.

41. The termination of the employees without 60 and 90 days' notice, as part of or as the reasonably foreseeable result of the mass layoff or closing of the Facility on or about August

29, 2025, constitutes a violation of the WARN Acts.

## FEDERAL WARN CLASS ALLEGATIONS

42.  Plaintiff brings this representative action for relief for violation of 29 U.S.C. § 2101 *et seq.*, suing for himself and all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5), who worked at, reported to, or received assignments from the Facility, who were terminated without cause within 90 days of August 29, 2025 or as the reasonably foreseeable consequence of the mass layoff and/or plant closing conducted by ASG on August 29, 2025, and who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5).

43.  Plaintiff seeks to bring forward these claims utilizing the Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), to seek certification of an opt-out class (the "WARN Class").

44.  The persons in the WARN Class identified above ("WARN Class Members") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, it is estimated to be at least 170 individuals. On information and belief, the number and identity of the WARN Class Member are within the sole control of ASG.

45.  On information and belief, the rate of pay and benefits that were being paid to each WARN Class Member at the time of his/her termination is contained in the books and records of ASG.

46.  Common questions of law and facts exist as to members of the WARN Class, including, but not limited to, the following:

    (a)  whether the members of the WARN Class were employees of ASG who worked at, received assignments from, or reported to the Facility;

    (b)  whether ASG unlawfully terminated the employment of the members of the WARN Class without cause and without 60 days' advance written notice in violation of the WARN Act; and

(c)     whether ASG unlawfully failed to pay the WARN Class members 60 days' wages and benefits as required by the WARN Act.

47.     Plaintiff's claims are typical of those of the WARN Class. Plaintiff, like other WARN Class members, worked at, reported to, or received assignments from the Facility, and was terminated without cause within 90 days of August 29, 2025, due to the mass layoffs and/or plant closings ordered by ASG

48.     At all relevant times, ASG was an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a) and continued to operate as a business until deciding to order a mass layoff or plant closing of the Facility.

49.     Plaintiff will fairly and adequately protect the interests of the WARN Class. Plaintiff has retained counsel competent and experienced in complex class actions, including the WARN Act and other statutory employment claims.

50.     Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and facts common to the WARN Class predominate over questions affecting only individual members of the WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  This is particularly so in the context of WARN Act litigation, where an individual Plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants, and the damages suffered by individual WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

51.     Concentrating all the potential litigation concerning the WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the

parties and is the most efficient means of resolving the WARN Act rights of all the members of the Class.

52.     Plaintiff intends to send notice to all members of the WARN Class to the extent required by Rule 23.

## NEW JERSEY WARN ACT CLASS ALLEGATIONS

53.     Plaintiff brings the New Jersey WARN Act claim for violation of the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act, N.J.S.A. § 34:21-1, as amended, on behalf of a class of similarly situated persons pursuant the New Jersey WARN Act and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at, reported to or received assignments from the Facility and were terminated without cause on or about August 29, 2025 (the "New Jersey WARN Class").

54.     The persons in the New Jersey WARN Class identified above ("New Jersey WARN Class Members") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

55.     On information and belief, the identity of the members of the class and the recent residence address of each of the New Jersey WARN Class Members is contained in Defendants' books and records.

56.     On information and belief, the rate of pay and benefits that were being paid by Defendants to each New Jersey WARN Class Member at the time of his/her termination is contained in the books and records of the Defendants.

57.     Common questions of law and fact exist as to members of the New Jersey WARN Class, including, but not limited to, the following:

(a) whether the members of the New Jersey WARN Class were employees of Defendants;

(b) whether one or more of the Defendants unlawfully ordered and carried out the termination the employment of the members of the New Jersey WARN Class without cause on their part and without giving them 90 days advance written notice in violation of the New Jersey WARN Act; and

(c) whether Defendants unlawfully failed to pay the New Jersey WARN Class members pay equal to one week of pay for each full year of employment plus four additional weeks for lack of advance notice, as required by the New Jersey WARN Act.

(d) whether Defendants are liable as employers to Plaintiff and the New Jersey WARN Class members.

58. Plaintiff's claims are typical of those of the New Jersey WARN Class. The Plaintiff, like other New Jersey WARN Class members, worked at, reported to or received assignments from Defendants' New Jersey Facility and was terminated on or about August 29, 2025, due to the terminations ordered and carried out by one or more of the Defendants.

59. Plaintiff will fairly and adequately protect the interests of the New Jersey WARN Class. Plaintiff has retained counsel competent and experienced in complex class actions on behalf of employees, including the New Jersey WARN Act, the federal WARN Act, other similar state laws, and employment litigation.

60. Class certification of these Claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New Jersey WARN Class predominate over any questions affecting only individual members of the New Jersey WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this

litigation – particularly in the context of New Jersey WARN Class Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual New Jersey WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

61. Concentrating all the potential litigation concerning the New Jersey WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the New Jersey WARN Act rights of all the members of the Class.

62. Plaintiff intends to send notice to all members of the New Jersey WARN Class to the extent required by Rule 23.

**FIRST CLAIM FOR RELIEF**
**Violation of the WARN Act, 29 U.S.C. § 2101 *et seq*.**

63. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

64. At all relevant times, ASG employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

65. At all relevant times, ASG was an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639.3(a) and continued to operate as a business until it decided to order mass layoff or plant closing of the Facility.

66. At all relevant times, Plaintiff and the WARN Class Members were "affected employees" of ASG as that term is defined by 29 U.S.C. § 2101(a)(5).

67. On or around August 29, 2025, ASG ordered a mass layout or plant closing of the Facility, as that term is defined by 29 U.S.C. § 210l(a)(2) and 20 C.F.R. § 639.3(j).

68. The mass layoff or plant closing of the Facility resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(2) for at least fifty of ASG's employees.

69. Plaintiff and the Class Members were terminated by ASG without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoff or plant closings ordered by ASG of the Facility.

70. ASG was required by the WARN Act to give Plaintiff and the Class Members at least 60 days advance written notice of their terminations.

71. ASG failed to give Plaintiff and the Class Members written notice that complied with the requirements of the WARN Act.

72. Plaintiff and each of the Class Members are "aggrieved employees" of the ASG as that term is defined in 29 U.S.C. § 2104(a)(7).

73. ASG ailed to pay Plaintiff and each of the Class Members their respective wages, salary, commissions, bonuses, health and life insurance premiums, accrued holiday pay and accrued paid time off for 60 days following their respective terminations, and failed to provide employee benefits including health insurance, for 60 days from and after the dates of their respective terminations.

## SECOND CLAIM FOR RELIEF
### Violation of the New Jersey WARN Act

74. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

75. At all relevant times, Defendants were an individual or private business entity defined as "employer" under the New Jersey WARN Act and continued to operate as a business

until one or more of the Defendants decided to and carried out the decision to terminate operations at the Establishment and/or Facility as defined by N.J.S.A..34:21-1.

76. At all relevant times, one or more of the Defendants owned and operated ASG's headquarters in New Jersey as an establishment as defined by the New Jersey WARN Act, for three years or more.

77. At all relevant times, the Individual Defendants acted in the interest of ASG in relation to the New Jersey WARN Class members.

78. Beginning on or about August 29, 2025, one or more of the Defendants terminated and carried out the decision to terminate the operations of the Facility, as defined by the New Jersey WARN Act. N.J.S.A. § 34:21-1.

79. By deciding to conduct a mass layoff and executing it, one or more of the Defendants were "employers" who acted on behalf of ASG and gave rise to the mass layoff and terminations of the putative class, as defined by N.J.S.A. § 34:21-2.

80. The New Jersey WARN Class Members suffered a termination of employment under the New Jersey WARN Act, having been terminated by one or more of the Defendants without cause on their part.

81. Defendants were required by the New Jersey WARN Act to give the New Jersey WARN Class members at least 90 days' advance written notice of their terminations.

82. Defendants failed to give the New Jersey WARN Class members written notice that complied with the requirements of the New Jersey WARN Act.

83. Defendants failed to pay the Class Members their severance equal to at least one week of pay for each year of employment as required by the New Jersey WARN Act, plus four additional weeks of pay for the failure to provide 90 days' advance notice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated persons, prays for the following relief as against Defendants:

A. Certification of this action as a class action;

B. Designation of Plaintiff as Class Representative;

C. Appointment of the undersigned attorneys as Class Counsel;

D. A judgment against ASG in favor of Plaintiff and the other similarly situated former employees equal to the sum of: their unpaid wages for the 60 days, that would have been covered and paid for that period, and/or against Defendants for at least one week of severance pay for each year of employment, plus four additional weeks' severance for the violation, all determined in accordance with the WARN Act, 29 U.S.C. § 2104 (a)(1)(A), and the New Jersey WARN Act N.J.S.A. § 34:21-2(b), as amended;

E. Reasonable attorneys' fees and the costs and disbursements that Plaintiff will incur in prosecuting this action, as authorized by 29 U.S.C. § 2104(a)(6), and/or N.J.S.A. § 34:21-6,

F. Interest as allowed by law on the amounts owed under the preceding paragraphs; and

G. Such other and further relief as this Court may deem just and proper.

Dated: December 15, 2025

Respectfully submitted,

 /s/ Gail C. Lin
Gail C. Lin, Esq. (Bar No. 036752001)
Jack A. Raisner, Esq. (*pro hac vice* forthcoming)

14

Isaac Raisner, Esq. (*pro hac vice* forthcoming)
René S. Roupinian, Esq.
**Raisner Roupinian LLP**
270 Madison Avenue, Suite 1801
New York, NY 10016
Telephone: (212) 221-1747
Fax: (212) 221-1747
Email: gcl@raisnerroupinian.com
Email: jar@raisnerroupinian.com
Email: isr@raisnerroupinian.com
Email: rsr@raisnerroupinian.com

*Attorneys for Plaintiff and the putative class*